**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**United States of America**,

   *Plaintiff*,

v.                    Case No. 3:11-cr-120
                        Judge Thomas M. Rose

**Michael Trammell,**

   *Defendant*.

---

**ENTRY CONCERNING RECOMMENDED SENTENCE CALCULATIONS UNDER THE UNITED STATES SENTENCING GUIDELINES FOR COCAINE POWDER AND COCAINE BASE**

---

   The Court is currently determining the appropriate sentence for violation of 21 U.S.C. § 846 and 841(a)(1) and (b)(1)(B) by conspiring to possess and distribute 28 grams of a substance containing cocaine base, commonly referred to as "crack." Defendant Michael Trammell has filed a sentencing memorandum requesting that the Court sentence Trammell as if he had possessed powder cocaine, rather than crack, since United States Sentencing Guidelines recommend that the sentence to be imposed for any given amount of crack cocaine be equal to the sentence imposed for 18 times as much powder cocaine.

   The United States has responded, arguing that the disparity in sentences for the two drugs

is defensible. The United States, before this Court, asserts that crack results in a shorter, more intense high than snorting powder cocaine, making it potentially more addictive than powder cocaine, is more likely to involve weapons or bodily injury and crack is associated with higher levels of crime. For these reasons, the Government asserts that the recommended sentencing disparity is appropriate.

The United States recognizes, however, that the Court has the power to vary from the advisory guideline range. Doc. 34 at 2. Indeed,"district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." *Spears v. United States*, 555 U.S. 261, 265–66, 129 S. Ct. 840 (2009). This Court is presently grappling with the question of whether it should vary categorically from the crack cocaine Guidelines based upon a policy disagreement with those Guidelines.

While the United States here formally opposes varying from the Guidelines, the Court notes that the Government has taken different positions in other venues. The Department of Justice has represented to Congress that "Sentencing courts have legal authority to disagree with policy judgments reflected in the current guidelines, and that authority includes the discretion to substitute a lesser crack/powder ratio." May 1, 2009 Memorandum from Deputy Attorney General David W. Ogden, *Department Policies and Procedures Concerning Sentencing for Crack Cocaine Offenses*, at 2, citing *Spears v. United States*, 129 S. Ct. 840 (2009) and *Kimbrough v. United States*, 552 U.S. – , 128 S. Ct. 558 (2008).

As to the first contention, that crack results in a shorter, more intense high than powder cocaine, is not true of the drug, but of the typical means of delivery. Smoking crack cocaine or injecting powder cocaine both result in a shorter, more intense high than snorting powder cocaine. Because powder cocaine can be injected as well as snorted, National Institute on Drug Abuse has

concluded that the two drugs have similar effects on the brain. *Statement of Lanny A. Breuer, Asst. Atty. Gen., Crim. Div., U.S. Dept. of Justice, before the U.S. Senate, Comm. on the Judiciary, Subcommittee on Crime and Drugs,* April 29, 2009, at 7.

As to the contentions that crack cocaine violations are more likely to involve firearms, and are associated with higher levels of crime, this is true. While 93.7% of powder cocaine offenses involved no violence and 89.6% of crack cocaine offenses involved no violence, inversely 6.3% of powder cocaine offenses were violent and 10.4% of crack cocaine offenses were violent. Thus, one can perceive powder cocaine offense to be slightly more likely to be non-violent compared to crack offenses, or, crack offenses to be proportionately much more likely to be violent than powder offenses. While this difference is significant, as in other types of crime, the Sentencing Guidelines applies adjustments for offenses that involve aggravating factors such as violence. The same is true of possession of a weapon: not only do the Guidelines provide sentencing adjustments, the United States Attorney is able to indict offenders guilty of such aggravating conduct to bring statutory minimum sentences to bear on the offender. Thus, while possession of a firearm or commission of violence are serious concerns, the Court and the United States Attorney are both capable of ensuring statutorily effective sentences are imposed when these types of conduct are present.

Finally, the Court is mindful of the mandate of 18 U.S.C. § 3553(a). While the foregoing discussion relates more to the command of 18 U.S.C. § 3553(a)(1)-(5), the Court must also be mindful of mandate of 18 U.S.C. § 3553(a)(6) to "avoid unwarranted sentencing discrepancies among defendants with similar records who have been found guilty of similar conduct." The Court notes that 82% of the individuals convicted of federal crack cocaine offenses are African-American, but only 27% of federal cocaine powder offenders are African-American. *Breuer* at 9. This racial disparity is all the more disturbing in the light of studies showing that 65% of people who have used

crack were white, while only fewer than 10% of federal offenders convicted of crack trafficking were white. See *United States v. Shull*, 793 F. Supp. 2d 1048, 1053-54 (S.D. Ohio 2011) (Marbley, J.). Clearly, the sentencing policy discrepancy between crack and powder cocaine not only treats defendants with similar records and guilty of similar conduct differently, it does so, intentionally or not, in a manner that has a racially disparate effect. As Judge Marbley points out, since unequal crack-powder sentencing Guidelines were enacted,

> the vast majority of those convicted of crack offenses—approximately 85%—have been black. This vast disparity did not exist before the Guidelines. In the first year and a half of Guidelines sentencing, blacks began to receive sentences that were more than 40% longer than whites.

*Id.* (citing *Kimbrough v. United States*, 552 U.S. 85, 98 (2007); and United States Sentencing Commission, Fifteen Years of Guidelines Sentencing 113 (Nov. 2004). See Bureau of Justice Stat., U.S. Dep't of Justice, Sentencing in Federal Courts: Does Race Matter? 6–7 (Dec.1993)). Such disparity does not effectuate 18 U.S.C. § 3553(a)(6).

Because the Supreme Court has declared that an accurate calculation under the United States Sentencing Guidelines is the appropriate "starting point and initial benchmark" of a reasonable sentence,

> the proper methodology, in light of [a] policy-based rejection of the 18:1 ratio in the Sentencing Guidelines, is to calculate the guideline range under existing law (i.e., using the 18:1 ratio) and any appropriate guideline adjustments or departures, ... but then to calculate an alternative guideline range using a 1:1 ratio, again including appropriate guideline adjustments or departures.... The court must ultimately use or vary from that alternative guideline range based upon consideration of the 18 U.S.C. § 3553(a) factors in light of case-specific circumstances.

*United States v. Williams*, 788 F. Supp. 2d 847, 892 (N.D. Iowa 2011). This Court agrees and will proceed accordingly in this and future cases.

## III. Conclusion

Because the Court will vary from the Guideline recommendation in cases involving crack to sentence defendants in these cases equal to cases involving powder cocaine, the United States Probation Department is **ORDERED** in this and all future cases involving crack cocaine to calculate the guideline range under the existing guidelines (i.e., using the 18:1 ratio) and any appropriate guideline adjustments or departures, but then to calculate an alternative guideline range using a 1:1 ratio, again including appropriate guideline adjustments or departures.

**DONE** and **ORDERED** in Dayton, Ohio on Wednesday, January 18, 2012.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE